IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATAHAMA, LLC, as assignee of FRESH HARVEST RIVER LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>FIRST COMMONWEALTH BANK, KERRY INC., and THE KERRY GROUP plc,<br><br>    Defendants. | Civ. No. 2:10-cv-01140-TFM<br><br>**ELECTRONICALLY FILED** |

# KERRY INC. AND THE KERRY GROUP PLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Mark A. Willard, Esq. (P.a. I.D. 18103)
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Phone: (412)566-6000
Fax: (412) 566-6099

*Of Counsel*:

Michael R. Feagley, Esq.
Emily M. Emerson, Esq.
MAYER BROWN, LLP
71 S. Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711

*Attorneys for Defendants Kerry Inc. and The Kerry Group plc*

{J1492993.1}

**INTRODUCTION**

Claiming to be an assignee of former plaintiff Fresh Harvest River LLC ("FHR"), Catahama, LLC ("Catahama" or "Plaintiff"), filed a First Amended Complaint (the "First Amended Complaint" or "FAC")[1] in this action on January 14, 2011.  As will be demonstrated below, the infirmities of the First Amended Complaint require that it be dismissed with prejudice pursuant to Fed.R.Civ. P. 12(b)(6).

Although Catahama, as the purported assignee of, has amended the original complaint, the First Amended Complaint suffers from the same defects as the original complaint and remains a desperate attempt to breathe life into unenforceable or already terminated agreements. Catahama's apparent strategy in its First Amended Complaint is simply to reassert many of the allegations against the defendants that previously have been rejected by two courts, namely, the Court of Common Pleas Court of Clearfield County, Pennsylvania (the "Common Pleas Court") and the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

In particular,  Catahama asserts three causes of action against Defendants Kerry, Inc. and The Kerry Group plc (collectively "Kerry").  The First Amended Complaint's first  cause of action against Kerry ("Sixth Claim for Relief") alleges that Kerry breached a Mutual Confidential Information Agreement (the "MCIA" attached hereto as Exhibit A).[2]   Catahama claims that Kerry allegedly used confidential information "to the detriment of FHR" (FAC ¶ 128) when  Kerry entered into a transaction with First Commonwealth Bank (the "Bank").  Because

---

[1] The First Amended Complaint, in addition to being defective for the reasons set forth in this Memorandum of Law, also violates Local Rule 8 ("LCvR 8") because Plaintiff's Third, Fourth, Sixth, Seventh and Eighth "Claims for Relief" the First Amended Complaint sets forth specific dollar amounts of unliquidated damages of $25,000,000, $2,500,000, $7,500,000 and $15,000,000 respectively.  Such amounts violate LCvR 8.  For this reason alone, the First Amended Complaint must be stricken from the docket.

[2] The court may consider documents attached as an exhibit to a motion to dismiss if plaintiff's claims are based on the documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. Pa. 1993).

Kerry had previously terminated the agreement with the Bank, however, there is no alleged damage that Plaintiff has suffered.  Moreover, Catahama has failed to set forth any specific allegation detailing Kerry's purported breach, instead relying on the bald assertion that, because Kerry entered into negotiations with the Bank – which Kerry ultimately terminated – Kerry must have breached the MCIA.  Such conclusory allegations fail to meet the requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) and must be dismissed.

Catahama's second cause of action against Kerry ("Seventh Claim for Relief") also is without merit.  Catahama alleges that Kerry breached a purported agreement arising out of an April 8, 2010 letter of intent with FHR (the "April 8 Letter" attached hereto as Exhibit B) and violated the implied covenant of good faith and fair dealing.  Catahama's First Amended Complaint is devoid of any factual allegations of breach of a specific term of the April 8 Letter, other than a conclusory reference that the termination by Kerry breached Paragraph 7 of the April 8 Letter, so its purported breach of contract claim must also fail.  With respect to Catahama's "good faith and fair dealing" allegation, the April 8 Letter imposed no obligation – express or implied – on Kerry to negotiate in good faith to consummate the purchase. Furthermore, Catahama cannot, as a matter of law, point to any damages arising from this alleged breach given that no transaction was consummated between Kerry and the Bank.  For these reasons, the second cause of action against Kerry should be dismissed.

Catahama's third cause of action against Kerry ("Eighth Claim for Relief") alleges that Kerry tortiously interfered with FHR's purported contract with the Bank.  However, because it has already been judicially determined that there is no enforceable agreement between FHR and the Bank, a claim of tortious interference with such alleged contract also must fail.  As

previously set forth in Kerry's motion to dismiss the original complaint, the Court of Common Pleas found "the conditions set forth in the [parties'] Sales Agreement did not occur and were not modified in writing." Common Pleas Opinion, dated Sept. 3, 2010, at 11.[3]  As a result, the Common Pleas Court held that "[b]ecause a contract for the sale of real property must be in writing to satisfy the Statute of Frauds, 33 P.S. § 1; 13 Pa. C.S. § 2201, even if the Court accepts as true the allegation that there was an oral agreement between the parties, it is unenforceable." *Id.* at 10.

Even if  Catahama's third cause of action against Kerry can be construed as a claim for tortious interference with a prospective relationship, that claim would likewise fail because Catahama has failed to sufficiently allege the requisite elements of the tort.  Further,  Catahama offers no allegations indicating that, but for Kerry's purported interference, there was a reasonable likelihood or probability of a prospective contractual relationship between the Bank and FHR.  Likewise,  Catahama cannot, as a matter of law, point to any damages arising from this alleged tort given that no transaction was consummated between Kerry and the Bank.

## PRELIMINARY CONSIDERATIONS[4]

The First Amended Complaint provides in Paragraph 4 that Catahama is a limited liability company formed under the laws of the State of Delaware, and that by "assignment" dated December 16, 2010, and in exchange for "good and valuable consideration," FHR assigned to Catahama "all claims and causes of action that FHR has against the Bank and Kerry." FAC at ¶ 4.

---

[3] A copy of the September 3, 2010 Common Pleas Opinion is attached hereto as Exhibit C.
[4] The First Amended Complaint also fails to allege the citizenship of the members of Catahama, which is identified as a limited liability company.  This is a violation of Fed. R. Civ. P. 8(a).  If there is not complete diversity between the members of Catahama and all defendants, this court lacks subject matter jurisdiction under 28 U.S.C. § 1332. *Zambelli Fireworks Manufacturing Co., Inc. v. Matthew Wood*, 592 F.3d 412 (3d Cir. 2010).

Catahama has failed to plead any facts that would support its conclusory allegation that "FHR assigned to Catahama all claims and causes of action that FHR has against the Bank and Kerry." FAC at ¶ 4. This conclusory allegation constitutes a violation of Fed. R. Civ. P. 8(a) as construed by the United States Supreme Court in *Iqbal* and *Twombly supra.* Because Catahama failed to adequately set forth facts to support the alleged "assignment" in the First Amended Complaint, counsel for Kerry made inquiry to counsel for Catahama concerning the alleged "assignment." Counsel for Catahama refused, however, to provide such information, stating that Catahama would not provide "free discovery" to the Defendants.

The First Amended Complaint's first cause of action against Kerry ("Sixth Claim for Relief") alleges that Kerry breached the Mutual Confidential Information Agreement (the "MCIA"). *See* Ex. "A." Paragraph 9(f) of the MCIA expressly provides that "neither party may assign this Agreement without the prior written consent of the other party." The MCIA states that it is governed by and to be construed in accordance with the laws of the State of Wisconsin. MCIA at ¶ 9(g). Wisconsin courts favor enforcement of anti-assignment provisions in contracts provided that, as with any other contract provision, the language is clear and unambiguous and enforcement is consistent with the intent of the parties. *See, e.g., J.G. Wentworth S.S.C. Limited Partnership v. Callahan,* 649 N.W.2d 694 (Wis. Ct. App. 2002)..[5] Accordingly, the First Amended Complaint does not adequately set forth a basis for this Court to determine whether Catahama has standing to assert a cause of action for breach of the MCIA or, for that matter, any

---

[5] The Restatement Second Contracts, § 322(2) provides that a contract term prohibiting assignment of rights under a contract, unless a different intention is manifested, does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation. The courts of Wisconsin have not, however, adopted this position. Nor does Section 322(2) apply to contracts that are executory. Because the MCIA is executory and there is performance pursuant to the agreement still outstanding, the Restatement rule articulated is inapplicable and the assignment should be held invalid. Accordingly, Catahama lacks standing to enforce the MCIA against Kerry.

claim whatsoever. At the very least, the Court should require that Catahama plead facts sufficient to satisfy the pleadings requirements of Fed. R. Civ. P. 8(a) set forth in *Iqbal* and *Twombly* as to the standing of Catahama to assert the claims set forth in the First Amended Complaint.

## I.     FACTUAL BACKGROUND

Beginning in or around March 2010, Kerry entered into a series of purchase orders with FHR under which FHR agreed to manufacture coffee syrup products, which Kerry in turn sold to Starbucks, an important customer of Kerry's. In connection with their customer/supplier relationship, Kerry and FHR executed the MCIA on March 5, 2010. During March and April, 2010, Kerry became interested in purchasing the manufacturing facility and equipment located at DuBois, Pennsylvania 15801 (the "Premises"). FHR represented to Kerry that FHR owned the Premises and would be interested in selling it to Kerry. In reliance on FHR's representations that it owned the Premises, Kerry signed the April 8 Letter with FHR concerning a purchase of the Premises for $22 million. *See* FAC ¶ 44; *see also* Ex. B at 1. For several weeks thereafter, Kerry conducted a due diligence investigation of the Premises. During that period, FHR did not disclose to Kerry that it (FHR) did not own the Premises. Instead, FHR delayed complying with Kerry's due diligence requests to prevent Kerry from learning that FHR did not own the Premises as it had represented.

On approximately May 18, 2010, Kerry independently discovered that the Bank held security interests in all equipment and improvements at the Premises and that it probably also owned the real estate. Although FHR represented to Kerry that it had an option to buy the Premises, in actuality, and as two courts have since held, FHR had no enforceable contractual right to purchase the Premises. *See* Ex. C (Common Pleas Opinion) at 10-11; *see also* Nov. 5,

2010 Bankruptcy Order at 2, n.11, attached hereto as Exhibit D.  On May 26, 2010, a representative of Kerry contacted a representative of FHR, notifying FHR that Kerry was terminating the April 8 Letter.  Kerry then sent a May 27, 2010 letter to FHR confirming its intentions.  A copy of the May 27, 2010 Letter is attached hereto as Exhibit E.

After May 28, 2010, Kerry discussed with the Bank a possible purchase of the Premises from the Bank.  Kerry and the Bank ultimately signed a July 10, 2010 Agreement of Purchase and Sale for the property.  On September 7, 2010, Kerry notified the Bank that it was terminating the agreement to purchase the Premises.  *See* Ex. F.

## II.     PRIOR LEGAL ACTIONS

With respect to the prior legal actions between FHR and the Bank regarding the Premises, please see pages 5 through 8 of the Bank's Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint filed in this action (Docket No. 61) (the "Bank's Brief"), which, by this reference, is incorporated herein.

## III.    ARGUMENT

As this Court recently has explained, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the legal sufficiency of a plaintiff's complaint.  *See Taylor v. Messmer*, No. 09-cv-1116, 2010 U.S. Dist. LEXIS 11003, at *18 (W.D. Pa. Feb. 9, 2010).  Moreover, it is well settled that  a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

While this Court must accept as true well-pleaded facts and allegations, and must draw all reasonable inferences in plaintiff's favor (see *Messmer*, 2010 U.S. Dist. Lexis 11003 at *18), the "factual allegations must be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555.  More recently, the Supreme Court has reiterated this requirement, stating that "only a complaint that states a *plausible* claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (emphasis added).

### A. Catahama's Claim for Breach of the MCIA is Without Merit and Should be Dismissed.

Catahama's claim for breach of the MCIA fails to state a claim and must be dismissed. To state a breach of contract claim under Wisconsin law,[6] a complaint must allege "(1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." *Brew City Redevelopment Group, LLC v. The Ferchill Group*, 289 Wis. 2d 795, 807, 714 N.W.2d 582, 588 (Wis. App. 2006) (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200, 203 (1971)).  In evaluating a breach of contract claim, a court must determine whether a valid contract exists, whether a party has violated its terms, and whether any such violation is material such that it has resulted in damages.  *Steele v. Pacesetter Motor Cars, Inc.*, 267 Wis. 2d 873, 880, 672 N.W.2d 141, 144 (Wis. App. 2003) (citing *Management Computer Servs., Inc. v. Hawkins, Ash, Baptie Co.,* 206 Wis. 2d 158, 178-83, 557 N.W.2d 67 (1996)).

Catahama has failed to set forth any specific factual allegation detailing Kerry's purported breach, instead relying on the bald assertion that, because Kerry entered into negotiations with the Bank, Kerry must have breached the MCIA.  Furthermore, Catahama's only statements relating to purported damage suffered are that Kerry allegedly used unspecified "information" obtained via the MCIA to "the detriment of FHR" in making "a separate deal with the Bank".  *See* FAC ¶ 128.  As explained above, however, no transaction between the Bank and Kerry ever occurred, so there simply can be no damages to FHR.  *See Iqbal*, 129 S. Ct. at  1950

---

[6]   Section 9(g) of the MCIA states: "This Agreement shall be governed by and construed in accordance with the laws of the State of Wisconsin . . . ."  *See* Ex. A at 3.

8

("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."); *see also* Ex. F.  Therefore, the claim against Kerry as set forth in the "Sixth Claim for Relief" in the First Amended Complaint must be dismissed.

> **B.      Catahama's Claim for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Fails as a Matter of Law.**

Catahama's claim in the Seventh Claim for Relief that Kerry breached the April 8 Letter of intent fails as a matter of law because Catahama has failed to set forth any facts to support a plausible claim for relief, nor any damage suffered by FHR as a result of the purported breach. As the Seventh Circuit[7] has explained, "the purpose and function of a preliminary letter of intent is not to bind the parties to their ultimate contractual objective.  Instead, it is only to provide the initial framework from which the parties might later negotiate a final . . . agreement, if the deal works out."  *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chemical Group, Inc.*, 873 F.2d 155, 158 (7th Cir. 1989) (internal citations omitted).  While courts have held that the terms of a letter of intent may impose a duty of good faith, "[t]he full extent of a party's duty to negotiate in good faith can only be determined, however, from the terms of the letter of intent itself."  *Id.*  Thus, the scope of any obligation to negotiate in good faith can only be determined from the framework the parties have established for themselves in the letter of intent.  *Id.* at 159.

To the extent  Catahama has amended  the complaint to aver that Kerry violated Paragraph 7 of the April 8 Letter,  Catahama's claim must fail because Paragraph 7 permits either party to terminate the agreement in the event a definitive agreement is not executed within thirty days of the effective date of the April 8 Letter.  Under the express terms of the April 8 Letter, its  effective date was April 14, 2010, the date FHR executed the agreement.  *See* Ex. B at

---

[7]      Section 8 of the April 8 Letter contains a choice of law provision stating that "This Letter of Intent shall be governed by and construed in accordance with the internal laws of the State of Wisconsin, without regard to its conflicts of law principles."  *See* Ex. B at 3.

4. Kerry terminated the agreement more than thirty days later by letter dated May 27, 2010. *See* Ex. E. Accordingly, Catahama has failed to state a claim that Kerry breached Paragraph 7 of the April 8 Letter.

Furthermore, the April 8 Letter's only reference implying any sort of "good faith" requirement was an exclusivity provision (Section 5) binding *only* upon FHR. The exclusivity provision stated that "FHR and its members agree that it and they will not offer the Plant for sale and will not, prior to the termination of this Letter of Intent, directly or indirectly negotiate with any person other than Kerry with regard to the purchase and sale of the Plant." Ex. B at 2. None of the terms of the April 8 Letter imposed any obligation upon Kerry to solely negotiate with FHR. Accordingly, there is no basis for Catahama's allegation that Kerry violated a duty of good faith and fair dealing with respect to the April 8 Letter. In any event, because the transaction between the Bank and Kerry was terminated, FHR incurred no damages arising from any alleged breach of the April 8 Letter. As a consequence of the foregoing, Catahama's Seventh Claim for Relief must be dismissed.

### C. Catahama's Claim for Tortious Interference With a Contract/Prospective Relationship Fails as a Matter of Law.

Catahama has styled its third claim against Kerry in its "Eighth Claim for Relief" as one for "Tortious Interference With Contract" (FAC ¶¶ 138-142) but, perhaps sensing that its purported contractual relationship with the Bank was unenforceable, added a fallback allegation of interference with a "prospective relationship". *Id.* at ¶ 140. Neither claim's conclusory allegations can withstand scrutiny under *Twombly/Iqbal*, however, and must be dismissed.

#### 1. Catahama's Tortious Interference With Contract Claim is Barred by the Statute of Frauds and Collateral Estoppel.

Under Pennsylvania law, the elements of a claim for tortious interference with contractual relations are: (i) there is an existing contractual relationship between the plaintiff and

10

a third party; (ii) the defendant interfered with the performance of that contract by inducing a breach or otherwise causing the third party not to perform; (iii) the defendant was not privileged to act in this manner; and (iv) the plaintiff suffered pecuniary loss as a result of the breach of contract. *Al Hamilton Contracting Co. v. Cowder*, 434 Pa. Super. 491, 644 A.2d 188 (Pa. Super. Ct. 1994). This claim necessarily fails because there was no existing contractual relationship between FHR and the Bank.

As a preliminary matter, the First Amended Complaint does not specify with *which* purported contract Kerry allegedly interfered. As this Court has held, "[i]f existing contracts are alleged to have been interfered with, the complaint should be able to allege what contracts or types of contracts they are." *Clubcom, Inc. v. Captive Media, Inc.*, No. 07-cv-1462, 2009 U.S. Dist. LEXIS 7960, at *32 (W.D. Pa. Jan. 31, 2009) (citing *Centennial School Dist. v. Independence Blue Cross*, 885 F. Supp. 683 (E. D. Pa. 1994)). The First Amended Complaint simply states that Kerry "interfered with FHR's contractual rights" (FAC ¶ 140), which fails to articulate the alleged contract or contracts at issue.

Even assuming that Catahama is referring to the Bank's purported agreement to sell the Premises to FHR, this claim never the less fails because it cannot fulfill the first element of tortious interference with contractual relations: that a contract between FHR and the Bank exists. As explained in the Bank's Brief, the alleged Real Estate Sales Agreement expired by its terms on October 30, 2009. Bank's Brief at 4. Catahama has not alleged any other written document existing indicating any further alleged agreement between FHR and the Bank. Bank's Brief at 14. As noted in the Bank's Brief, under Pennsylvania law, the statute of frauds provides that no interest in land may be assigned, granted or surrendered unless by deed or note, *in writing*, and signed by the parties or their agents. *Id.* (citing 33 P.S. § 1) (emphasis supplied by Bank's

11

Brief).[8]  Therefore, the statute of frauds renders an oral agreement for the sale of land unenforceable, barring the remedy of specific performance.  *Id.* (citing 33 P.S. § 1; *Deutsche Bank Nat'l Trust Co. v. Evans*, 421 B.R. 193, 199 (W.D. Pa. 2009)).

Moreover, Catahama is collaterally estopped from alleging tortious interference with the Real Estate Sales Agreement because two courts have already held that such agreement is unenforceable.  Under Pennsylvania law, collateral estoppel bars relitigation of an issue where "(i) an issue decided in a prior action is identical to one presented in a later action, (ii) the prior action resulted in a final judgment on the merits, (iii) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (iv) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action."  *Keystone Redevelopment Partners, LLC v. Decker*, 674 F. Supp.2d 629, 656 (M.D. Pa. 2009) (citation omitted).  Applying these elements to the issue of whether the Real Estate Sales Agreement is an enforceable written contract, it is clear that Catahama is estopped from raising the argument before this Court.

The "Ejectment Action" addressed the issue of whether the Real Estate Stales Agreement was a valid and binding contract.  *See Witkowski v. Welch*, 173 F.3d 192, 203 (3rd Cir. 1999) (for the application of issue preclusion, "[o]nly the issues need be the same").  In doing so, the Common Pleas Court held that the Real Estate Sales Agreement was unenforceable.  *See* Ex. C.  Further, when FHR raised this argument in the Bankruptcy Action, Chief Judge Gonzalez noted FHR's previous attempt to assert the claim and rejected the argument based upon the Common Pleas Opinion.  *See* Ex. D at 2.

In addition, the Ejectment Action Order, attached as Exhibit C, is a final judgment on the merits.  Under Pennsylvania law, a judgment by confession is a final judgment "on the merits"

---

[8]  Kerry incorporates herein by this reference pages 14 through 16 of the Bank's Brief.

which operates to bar a collateral challenge to that judgment or any claim arising out of the same underlying transaction or nucleus of events. *See Klecha v. Bear*, 712 F. Supp. 44, 46 (M.D. Pa. 1989) (a judgment by confession bars examination "of that judgment or any other claims arising out of the same transaction or nucleus of events") (citations omitted); *see also Delahanty v. First Pennsylvania Bank*, 318 Pa. Super. 90, 464 A. 2d 1243, 1268 (1983) (finding judgment by confession entered in common pleas court precluded examination – by another court – of judgment and other claims arising out of same transaction and nucleus of events) (citations omitted).

Finally, the third and fourth elements necessary to invoke collateral estoppel also are clearly satisfied. FHR was a party to the Ejectment Action (and Catahama claims to be the assignee of FHR in this matter). FHR had a full and fair opportunity to be heard and to litigate the issues – with briefing and an oral argument – in the Ejectment Action. *See* Bank's Brief at 18. For these reasons, the claim for tortious interference with contract fails and should be dismissed.

### 2. Catahama's Claim for Tortious Interference With a Prospective Contractual Relationship Fails as a Matter of Law.

The requisite elements of a cause of action for interference with prospective contractual relations are as follows: "(1) a prospective contractual relationship; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." *Phillips v. Selig*, 959 A.2d 420, 428 (Pa. Super. 2008) (citing Restatement (Second) of Torts § 766B (1979); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 209, 412 A.2d 466, 471 (1979); *Strickland v. University of Scranton*, 700 A.2d 979, 985(Pa. Super. 1997)). Catahama simply recites these elements in its First Amended Complaint, stating

13

"Kerry wrongfully, purposefully and tortuously, and without privilege or justification, interfered with FHR's contractual rights and/or prospective relationship with the Bank" and claiming that, as a result, FHR was damaged. FAC ¶¶ 140-142. As held in *Iqbal* and *Twombly*, however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

Catahama also fails to allege the second element of tortious interference with a prospective contractual relations: the purpose or intent to harm the plaintiff by preventing the relation from occurring. "The defendant must not only have intended the interference, but must have acted in part at least for the purpose of accomplishing it." *Glenn et al. v. Point Park College*, 441 Pa. 474, 481; 272 A.2d 895, 899 (1971) (citations omitted). Because there is no allegation that Kerry acted for specific purpose of causing harm to FHR and no plausible reason alleged as to why Kerry would so act, the claim for interference with prospective contractual relations must be dismissed. *See id.*

Further, Catahama offers no allegations indicating that, but for Kerry's purported interference, there was a reasonable likelihood or probability of a prospective contractual relationship between the Bank and FHR. As this Court has explained, "[p]roof of a claim of tortious interference with prospective contractual relations requires a showing of the existence of prospective contracts." *Clubcom*, 2009 U.S. Dist. LEXIS 7960, at *33 (citing *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1014 (3d Cir. 1993), *cert. denied, National Decorating Products Ass'n, Inc. v. Alvord-Polk, Inc.*, 514 U.S. 1063, 115 S. Ct. 1691 (1995)). "A prospective contract is something less than a contractual right, something more than a mere hope", and Pennsylvania requires that there be an "objectively reasonable probability that a contract will come into existence." *Id.* at *33-*34 (citing *Schulman v. J.P. Morgan Inv.*

*Management, Inc*., 35 F.3d 799, 808 (3d Cir. 1994)).  Pleadings that "merely point[] to an existing business relationship or past dealings [do] not reach this level of probability." *Id.* at *34 (citing *General Sound Telephone Co., Inc., v. AT & T Communications, Inc*., 654 F. Supp. 1562, 1565 (E. D. Pa. 1987)).  Here, Catahama has failed to identify with sufficient precision which, if any, prospective contracts it would have entered into but for the vague allegations of tortious interference on the part of Kerry or that there was a reasonable probability of a contract or contracts coming into existence.  *See id.* at *35.

Finally, as explained in the forgoing paragraphs, Catahama cannot, as a matter of law, point to any damages arising from this alleged tort given that no transaction was consummated between Kerry and the Bank.

### D.   Catahama Should Not Be Permitted To Amend The Complaint

As demonstrated above, Catahama's claims not only fail as a matter of law, but are fatally flawed.  Given these deficiencies, Catahama will likely attempt to file a second amended complaint.  Such an attempt, if made, should be denied.  *See Morgan v. Hanna Holdings, Inc*., No. 07-803, 2010 U.S. Dist. LEXIS 31367, at *3 (W.D. Pa. Mar. 30, 2010) (leave may be denied where proposed amendment would be futile or where amendment is prejudicial, arises from undue delay or dilatory motive).  Here, any additional attempt to amend would be futile because the alleged agreement between FHR and the Bank that forms the basis of FHR's original Complaint as well as the First Amended Complaint has been adjudged – twice –  to be unenforceable.  Moreover, plaintiff Catahama, as a purported assignee, has filed as its First Amended Complaint a document nearly identical to the Complaint originally filed in this matter by FHR.  Thus, any request to replead should be denied.

## IV. CONCLUSION

For all of the foregoing reasons, Kerry respectfully requests that the Court grant its motion in its entirety and dismiss the claims against Kerry set forth in the First Amended Complaint.

Dated:   February 18, 2011                                    Respectfully submitted,

/s/ Mark A. Willard
Mark A. Willard, Esq.
P.a. I.D. 18103

Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Phone: (412)566-6000
Fax: (412) 566-6099

Email: mwillard@eckertseamans.com

*Of Counsel*:

Michael R. Feagley, Esq.
Emily M. Emerson, Esq.

MAYER BROWN, LLP
71 S. Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711

Email: mfeagley@mayerbrown.com
Email: eemerson@mayerbrown.com

*Attorneys for Defendants Kerry Inc. and The Kerry Group plc*

**CERTIFICATE OF SERVICE**

    I, Mark A. Willard, an attorney, hereby certify that on February 18, 2011, I electronically filed the foregoing Kerry Inc. and The Kerry Group plc's Memorandum of Law in Support of Their Motion to Dismiss The First Amended Complaint using the CM/ECF system, which will send notification of such filing to all attorneys of record.

                                         /s/ Mark A. Willard
                                         Mark A. Willard, Esq.