**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CATAHAMA, LLC** | ) |
| *as assignee of FRESH HARVEST RIVER LLC* , | ) |
| **Plaintiff,** | ) |
| | )   **2:10-cv-1140** |
| **v** | ) |
| | ) |
| **KERRY INC. and THE KERRY GROUP PLC** | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court is KERRY INC. AND THE KERRY GROUP PLC'S

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (Document No.

92) (collectively "Kerry"), with brief in support.  Plaintiff Catahama, LLC ("Catahama") filed a

brief in opposition to the motion with numerous exhibits.  Kerry filed a reply brief and the

motion is ripe for disposition.


Factual and Procedural History

As described more fully in the Court's Memorandum Opinion and Order of June 24,

2011 (the "June 24 Opinion"), this case arises out of a failed business venture.  Plaintiff

Catahama is pursuing this case as an assignee of Fresh Harvest River, LLC ("FHR").  The

original complaint and first amended complaint asserted multiple claims against Kerry and First

Commonwealth Bank (the "Bank").  In the June 24 Opinion, the Court dismissed all claims

against the Bank; dismissed all claims against Kerry except for an alleged breach of ¶ 7 of the

Letter of Intent ("LOI"); and gave Plaintiff leave to file a second amended complaint.  Plaintiff

has done so, and has also filed Notice of its intent to stand on the first amended complaint as to

the Bank (Document No. 88).  Kerry now seeks dismissal of the Second Amended Complaint.

Briefly summarized, in the summer of 2008, the Bank foreclosed on its security interest in a state-of-the-art food manufacturing facility and equipment located in Dubois, Pennsylvania (the "Facility") and thereby obtained title.  To preserve the value of its collateral, the Bank preferred to keep the Facility occupied and operating.  In March-April 2009, after extensive negotiations, the Bank and FHR entered into a series of agreements, including a mortgage, lines of credit and a temporary lease.  FHR continued to possess and operate the Facility while further negotiations ensued.  In October 2009, FHR was unable to make a required $2,500,000 down payment because Abramson, the FHR partner who was to supply the money, backed out.  This problem coincided with an unforeseen and historic economic downturn that devastated the real estate market, consumer food demand and FHR's business prospects.  FHR advised the Bank of these developments, and of its plan to locate new investors.  The Bank and FHR agreed to adjourn the closing indefinitely.

FHR remained in possession of the premises.  By January 2010, FHR had reached its credit limit and the Bank advised FHR that it was unwilling to loan additional funds under the lines of credit.  In February 2010, FHR identified Catahama as a potential investor.  Plaintiff alleges that Catahama was willing to provide working capital and to fund customer orders, under certain conditions.[1]  Plaintiff alleges that in February 2010, aware that without funding FHR would discontinue operations and the value of the Bank's collateral would be reduced, the Bank agreed to Catahama's conditions.  Subsequently, FHR borrowed $2,162,375.15 from Catahama.

In March 2010, Kerry contacted FHR to explore a co-packing arrangement.  FHR and Kerry entered into a Mutual Confidential Information Agreement ("MCIA") on March 5, 2010, in anticipation of a customer/supplier relationship.  Kerry personnel then visited the Facility and obtained confidential and proprietary information about FHR's business, methods and

---

[1] The details of the alleged agreement between Catahama, FHR and the Bank are not relevant to this motion.

equipment, including the production areas, the research lab and FHR personnel.  Kerry was

impressed and pledged orders for 8,000,000 cases of product per year.  Kerry also developed an

interest in purchasing the Facility.  On April 8, 2010, FHR and Kerry entered into a Letter of

Intent ("LOI") by which Kerry would acquire the Facility from FHR for $22,000,000, subject to

due diligence and other conditions.

In late April 2010, FHR asked the Bank how much it would cost to buy the Facility and

pay off the amounts borrowed under the lines of credit.  The Bank responded with a price of

$18,600,000, although it was unwilling to release Abramson from his personal guarantee.  On

April 27, 2010, FHR informed the Bank that it was able to close the transaction.

Plaintiff alleges that sometime after entering into the LOI with FHR but prior to mid-May

2010, Kerry disclosed the existence of the LOI to the Bank.  Plaintiff further alleges that Kerry

entered into separate, direct negotiations with the Bank to purchase the Facility.  Plaintiff alleges

that during these negotiations, Kerry misused confidential and proprietary information it had

obtained from FHR pursuant to the MCIA.

On May 6, 2010, the Bank sent FHR "formal notice" that it had elected to terminate the

Agreement of Sale (the "May 6 Termination Letter").  On May 18, 2010, the Bank sent another

letter to FHR to accelerate its Revolving Line of Credit, based upon FHR's failure to cure the

alleged defaults set forth in the May 6 Termination Letter.  On July 2, 2010, the Bank entered

into an agreement to sell the Facility to Kerry for $20,000,000.  On July 6, 2010, the Bank

advised FHR of this agreement and demanded that FHR quit the premises as of July 26, 2010.

The Bank also sent letters to FHR customers, to demand that they pay directly to the Bank all

amounts due to FHR.  FHR's business failed and litigation began.

On September 7, 2010, Kerry terminated its agreement to buy the Facility from the Bank. On September 12, 2010, FHR filed for bankruptcy protection under Chapter 11.  On November 10, 2010, the Bank executed its Writ of Possession and ejected FHR from the Facility.

As noted above, only Counts Six through Eight of the Second Amended Complaint remain at issue.  In Count Six, Plaintiff alleges that Kerry breached the MCIA by exploiting the information it obtained to negotiate a purchase of the Facility from the Bank.  In Count Seven, Plaintiff alleges that Kerry breached the LOI and/or an implied covenant of fair dealing by informing the Bank of the existence of the LOI, in violation of ¶ 6.  SAC ¶ 145.  In addition, Plaintiff alleges that in late May 2010, Kerry unilaterally terminated the LOI in breach of ¶ 7.[2] In Count Eight, Plaintiff alleges that Kerry tortiously interfered with FHR's prospective contract with the Bank.


Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the legal sufficiency of the complaint filed by Plaintiff.  The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff.  However, as the Supreme Court made

---

[2] Somewhat awkwardly, SAC ¶ 147 contains the phrase: "*[t]o the extent Kerry claims* to have terminated the Kerry LOI . . ,*"* (emphasis added), as if Plaintiff is attempting to preemptively rebut an affirmative defense.  Kerry has not objected to this wording, which is identical to ¶ 136 of the first amended complaint.

clear in *Twombly,* the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* -- U.S. --, 129 S. Ct. 1937, 1950 (2009).

However, nothing in *Twombly* or *Iqbal* has changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6). That is, the Supreme Court did not impose a new, heightened pleading requirement, but reaffirmed that Federal Rule of Civil Procedure 8 requires only a short, plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (*citing Twombly*, 550 U.S. at 552-53). Additionally, the Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* (*citing Twombly*, 550 U.S. at 553). As described in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009), the Court must first distinguish between factual allegations and legal conclusions in the complaint and then determine whether the well-pleaded factual allegations and favorable inferences drawn therefrom show an entitlement to relief.

Legal Analysis

As an initial matter, the Court must determine what documents and evidence it may consider in ruling on the motion. Plaintiff has submitted numerous documents and a Declaration of Allan Simpson in connection with its brief in opposition. Similarly, Kerry has asserted facts in its brief that are not contained in the Second Amended Complaint, to wit: that FHR delayed in

complying with Kerry's due diligence requests to prevent Kerry from learning that FHR did not own the Premises; that on May 18, 2010, Kerry independently discovered that the Bank held security interests in all equipment and improvements at the Premises and probably owned the real estate; and that FHR falsely represented that it had an option to buy the Premises.

The Court has previously determined that the MCIA and LOI may be considered in ruling on the motion to dismiss because they were referenced in the complaint and of undisputed authenticity. *See Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, the Court will not consider the documents submitted by Plaintiff or the allegations contained in Kerry's brief. The fundamental purpose of a motion pursuant to Fed. R. Civ. P. 12(b)(6) is to evaluate the allegations set forth in the <u>complaint</u>. A plaintiff may not cure alleged deficiencies in its pleading by attaching documents to its brief. On the other hand, the Court must consider the facts set forth in the complaint as true, and may not base its decision on other "facts" set forth in a defendant's brief. The Court declines to convert the pending motion into a motion for summary judgment as discovery has not yet commenced and the parties have not had an opportunity to present all material which they may consider to be pertinent. *See* Fed. R. Civ. P. 12(d). The Court turns now to the Second Amended Complaint.

1.   Count Six - Breach of MCIA

It is undisputed that Kerry and FHR executed a MCIA in March 2010 in expectation of a customer/supplier relationship.[3]  In Count Six, Plaintiff alleges that Kerry used the MCIA as a pretext to obtain extensive information which it exploited to the detriment of FHR to make a separate arrangement with the Bank. The June 24 Opinion dismissed a similar claim, as pled in the Amended Complaint, on the basis that the allegations lacked specificity.

---

[3] The MCIA and LOI provide that they be construed in accordance with Wisconsin law.

Kerry moves again for dismissal of Count Six.  Kerry contends that the information allegedly disclosed did not constitute "confidential information" as defined in the MCIA because FHR did not provide a written summary within thirty days, as required by ¶ 2 of the MCIA. Kerry also contends that Plaintiff has failed to plead how the confidential information affected its negotiations with the Bank.  Finally, Kerry contends that Plaintiff's theory is inherently implausible and that no damages resulted because Kerry never finalized its deal with the Bank.

Plaintiff contends that it has remedied all of the deficiencies identified by the Court's June 24 Opinion and has stated a valid claim.  Plaintiff points to ¶ 3 of the MCIA, which provides that "Confidential Information" may be used "solely" for the customer/supplier arrangement and shall not be disclosed to any third party.  Similarly, ¶ 6 of the MCIA provides that "Confidential Information" may be used "only for the benefit of the disclosing party" (i.e., FHR).  Plaintiff contends that the information that FHR provided pursuant to the MCIA allowed Kerry to learn of the true value of the business and that Kerry misused the information to make plans to purchase the Facility from the Bank.  Plaintiff contends that FHR suffered damages through: (1) the disruption of its customer/supplier relationship with Kerry; (2) the frustration of its deal to sell the Facility to the Bank; and (3) FHR's loss of business while the deal between Kerry and the Bank was still pending.  Plaintiff contends that ¶ 2 of the MCIA (marking of the confidential information) is inapposite because Kerry's breach occurred within the 30-day marking window.

The elements of a breach of contract claim under Wisconsin law are straight-forward:  (1) the existence of a contract; (2) a breach; and (3) resultant damages.  The first two elements are met.  The existence of the MCIA is not contested.  Plaintiff has adequately pled a breach of ¶¶ 3

and 6, in that Kerry allegedly did not use the information it obtained "solely" for the customer/supplier relationship and "only for the benefit of [FHR]."

The damages resulting from the alleged breach are somewhat difficult to determine, and may well be minimal. Plaintiff does not allege that Kerry disclosed its confidential information to the marketplace, but rather, that Kerry misused the information for its own negotiations with the Bank. Plaintiff would not be damaged merely because Kerry allegedly obtained unfair advantage over the _Bank_. Indeed, Plaintiff likely will not be entitled to recover all damages which allegedly flowed from its subsequent business failure, as those events likely did not reasonably result from the alleged breach. The MCIA did not bar Kerry from contacting the Bank or from attempting a direct purchase of the Premises. To the contrary, the MCIA limited only the misuse of confidential information during such negotiations. The measure of damages must be similarly limited. *See Pressure Cast Prods. Corp. v. Page*, 51 N.W.2d 898 (Wis. 1952) (non-breaching party is "entitled to recover ... damages directly and naturally resulting in the ordinary course of events from the breach of contract"). Nevertheless, the amount of damages is typically a jury question and the existence of such damages has been adequately pled.

Plaintiff may be hard-pressed to prove causation, i.e., that Kerry, in fact, misused confidential information obtained pursuant to the MCIA in its negotiations with the Bank. The Second Amended Complaint acknowledges that Kerry is active in the industry. Thus, it may have had sufficient independent knowledge to negotiate with the Bank. Moreover, the MCIA did not prevent Kerry from obtaining information in the public domain, or that was otherwise available. See MCIA ¶ 1(c). This issue, too, must await development of the record.

In summary, the Court concludes that Count VI of the Second Amended Complaint sets forth a viable claim for breach of the MCIA.

2.   Count Seven – Breach of the LOI

In Count VII of the Second Amended Complaint, Plaintiff contends that Kerry breached ¶¶ 6 and 7 of the LOI.  Specifically, Plaintiff contends: (1) that Kerry breached ¶ 6 by disclosing the existence of the LOI to the Bank; and (2) that Kerry breached ¶ 7 by unilaterally terminating the LOI while the parties were still engaged in negotiations designed to lead to a definitive agreement.  Alternatively, Plaintiff contends that Kerry failed to act in good faith to consummate the transaction.  In its June 24 Opinion, the Court concluded that the Amended Complaint had failed to allege a plausible breach of the confidentiality provision in ¶ 6 of the LOI, but had stated a valid claim for wrongful termination pursuant to ¶ 7 of the LOI.

Kerry contends that the Second Amended Complaint fails to allege sufficient facts to state a valid claim for breach of the LOI.  Kerry acknowledges that the Second Amended Complaint now contains "additional wholly conclusory phrases" which attempt to address the shortcomings identified in the June 24 Opinion.  However, Kerry contends that the additional averments lack specificity and do not cure the fundamental implausibility of the claim, i.e., that Kerry informed the Bank of its intention to buy the Premises from FHR at the same time that Kerry was attempting to buy the Premises directly from the Bank.  Finally, Kerry argues that no damages resulted from the alleged breaches and that it had no duty to negotiate the LOI in good faith.

The Court concludes that Plaintiff has stated viable claims and has remedied the deficiencies of the earlier complaint.  Paragraph 6 of the LOI states, in relevant part:  "This Letter of Intent (***including the fact of its existence***) and the parties' intention to consummate the contemplated transaction shall remain confidential and may not be disclosed to any person…."  (Emphasis added).  The Second Amended Complaint clearly alleges that prior to mid-May, 2010,

Kerry disclosed the existence of the LOI to the Bank, in violation of the express terms of ¶ 6. The damages resulting from this breach are unclear, but as explained above, that issue must await further development of the record.  Plaintiff theorizes that Kerry's disclosure induced the Bank to terminate its purchase of the Premises from FHR and instead, to deal with Kerry directly.

As to the alleged breach of ¶ 7, as the Court explained in the June 24 Opinion, Kerry did not have a unilateral right to terminate the LOI.  Rather, termination was conditional – "provided the parties are not then engaged in negotiations designed to lead to such a definitive agreement." At this stage of the case, the Court must assume the truth of Plaintiff's allegations that the parties were continuing to negotiate a definitive agreement, and thus, the "wrongful termination" theory cannot be dismissed.

The Court cannot agree with Kerry's assertion that it had no implied duty to act in good faith.  To the contrary, such a duty is implied into every contract under Wisconsin law.  *Market Street Associates Ltd. Partnership v. Frey*, 21 F.3d 782, 786 (7th Cir. 1994) (citations omitted).

Accordingly, the motion to dismiss Count VII will be **DENIED**.


3.  Count Eight- Tortious Interference Claim

To plead a prima facie case for tortious interference with contract under Pennsylvania law,[4] Plaintiff must allege:  (1) the existence of a contractual (or prospective contractual) relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.  *Remick v. Manfredy*,

---

[4] The parties have not disputed that Pennsylvania law applies to this claim.

238 F.3d 248, 263 (3d Cir. 2001) (citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1987)).  Under Pennsylvania law, it is Plaintiff's burden, as part of the prima facie case, to show that Defendant acted without justification.  *Triffin v. Janssen*, 626 A.2d 571, 574 n.3 (Pa. Super. 1993) (citations omitted).

In the June 24 Opinion, the Court concluded that Plaintiff had failed to adequately plead that Kerry had acted "without privilege or justification."   The Second Amended Complaint contains one new averment, ¶ 153, in which Plaintiff alleges that Kerry breached the LOI and MCIA to sidestep FHR and pursue a deal directly with the Bank.

Kerry reiterates its contention that Plaintiff has failed to plead an absence of justification. The Court agrees.  The alleged tortious interference is merely duplicative of the breach of contract claims set forth in Counts Six and Seven.  Kerry had no independent duty under public policy to refrain from purchasing the Premises directly from the Bank – particularly after Kerry learned that the Bank was the rightful owner.  Such duties arose only by way of the LOI and/or MCIA.  Thus, the tortious interference claim is barred by the "gist of the action" doctrine. *Chemtech Intern., Inc. v. Chemical Injection Technologies, Inc.*, 170 Fed. Appx. 805, 809 (3d Cir. 2006) (unpublished).  Thus, the Second Amended Complaint has not set forth a prima facie case for tortious interference.

Accordingly, the motion to dismiss Count VIII will be **GRANTED**.

Conclusion

For the reasons set forth above, KERRY INC. AND THE KERRY GROUP PLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (Document No. 92) will be **GRANTED IN PART AND DENIED IN PART.**  Count Eight will be dismissed with prejudice.  Kerry will be required to file an Answer to Counts Six and Seven of the Second Amended Complaint on or before November 9, 2011.

An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CATAHAMA, LLC** | ) |
| *as assignee of FRESH HARVEST RIVER LLC* , | ) |
| **Plaintiff,** | ) |
| | ) **2:10-cv-1140** |
| **v** | ) |
| | ) |
| **FIRST COMMONWEALTH BANK, KERRY** | ) |
| **INC. and THE KERRY GROUP pLC** | ) |
| **Defendants.** | ) |
| | ) |

**ORDER OF COURT**

AND NOW, this 26th day of October 2011, in accordance with the foregoing
Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that KERRY
INC. AND THE KERRY GROUP PLC'S MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT (Document No. 92) will be **GRANTED IN PART AND DENIED**
**IN PART.**  Count Eight of the Second Amended Complaint is **DISMISSED WITH**
**PREJUDICE**.

On or before November 9, 2011, Kerry shall file an Answer to Counts Six and Seven of
the Second Amended Complaint.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

**CC:**     **Peter H. Schnore, Esquire**
Email: pschnore@bccz.com
**Kevin K. Douglass, Esquire**
Email: kdouglass@bccz.com
**Lita Beth Wright, Esquire**
Email: lbwright@samlegal.com
**Steven G. Storch, Esquire**
Email: storch@samlegal.com
**Jason Levin. Esquire**
Email: jlevin@samlegal.com

**Harry H. Rimm, Esquire**
Email: hrimm@reedsmith.com
**Jarrod Shaw, Esquire**
Email: jshaw@reedsmith.com
**John Henry Doyle , III, Esquire**
Email: jdoyle@reedsmith.com

**Emily M. Emerson, Esquire**
Email: eemerson@mayerbrown.com
**Mark A. Willard, Esquire**
Email: mwillard@eckertseamans.com
**Michael Rowe Feagley, Esquire**
Email: mfeagley@mayerbrown.com